Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
2901 Cleveland Avenue, Suite 201
Santa Rosa, CA 95403
Tel. (707) 595-4414
Facsimile: (707) 581-1983
E-mail: izaak@izaakschwaiger.com

Brian Gearinger, SBN 146125
**GEARINGER LAW GROUP**
115 4th Street, Suite C
Santa Rosa, California 95401
Telephone: (415) 440-3102
E-mail: brian@gearingerlaw.com

John H. Scott, SBN 72578
**SCOTT LAW FIRM**
2767 Dyer Avenue
Sebastopol, CA 95472
Telephone: (415) 377-3054
E-mail: john@scottlawfirm.net

Attorneys for the Plaintiff NICHOLAS LA MOTTE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS LA MOTTE,<br><br>Plaintiff,<br><br>v.<br><br>CHP Officer J. RAY (22362), CHP Sergeant J. SNIDER (17419), and DOES 1-25, inclusive.<br><br>Defendants. | Case No. 4:24-cv-07249-AMO<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS; REQUEST FOR JUDICIAL NOTICE**<br><br>Date: January 7, 2027<br>Time: 2:00 PM<br>Place: Courtroom 5, 2nd Floor<br>1301 Clay Street<br>Oakland CA 94612 |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on January 7, 2027, at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 5, 2nd Floor, of the above-entitled Court, located at 1301 Clay

Street, Oakland, California, Plaintiff Nicholas La Motte ("Plaintiff" or "Mr. La Motte") moves for (1) an award of reasonable attorneys' fees and Non-Statutory Costs. Plaintiff seeks fees in the total amount of $1,266,957 (which includes a 2.0 multiplier on the lodestar), (2) an award of non-statutory costs in the amount of $16,783.77, and (3) an award of an additional $68,000, which represents a "fair estimate" of additional attorneys' fees.

This motion will be made on the grounds that 42 U.S.C. Section 1988 and California Civil Code Section 52.1(h) provide for the recovery of reasonable fees by the parties prevailing on Section 1983 and Bane Act claims. An upward multiplier of 2.0 is justified by the contingent nature of the fee, the difficulty of the case, the skill of counsel, the preclusion of other opportunities, and the success achieved. Further, reasonable out-of-pocket expenses that would normally be charged to a paying client are recoverable as part of a fee award, even if those costs are not taxable pursuant to 28 U.S.C. Section 1920. *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994). Finally, Plaintiff is entitled to an award of the "fair estimate" of their anticipated future work in responding to Defendants' opposition to Plaintiff's Motion for Attorneys' Fees and Non-Statutory Costs and Defendants' anticipated post-trial motions.

The motion is based on this notice of motion, the following memorandum of points and authorities, the Request for Judicial Notice, the declarations filed herewith, and on such other evidence as may be presented at or before the hearing.

Dated: September 28, 2026

**GEARINGER LAW GROUP**
**SCHWAIGER LAW FIRM**
**SCOTT LAW FIRM**

By: /s/ *Brian Gearinger*
Brian Gearinger
Attorney for Plaintiff

**TABLE OF CONTENTS**

I. OVERVIEW ........................................ 1
II. FACTS RELEVANT TO THIS MOTION ........................................ 2
A. Mr. Schwaiger's Decision To Represent Mr. La Motte Against The CHP Officers ........ 2
B. The La Motte Litigation ........................................ 3
C. Settlement Negotiations ........................................ 4
D. The Verdict ........................................ 5
III. LEGAL ARGUMENT ........................................ 5
A. As Prevailing Party, Plaintiff Is Entitled To Reasonable Attorneys' Fees ........................................ 5
B. Plaintiff's Lodestar Request ........................................ 7
C. The Hours Claimed by Plaintiff's Counsel Are Reasonable ........................................ 7
D. Plaintiff's Counsel's Requested Rates Are Reasonable ........................................ 9
E. The Applicable Factors Justify a Significant Multiplier ........................................ 10
1. The Case Was Difficult and Presented Many Novel and Complex Questions ......... 11
2. Plaintiff's Counsel Exhibited a High Level of Skill ........................................ 12
3. Plaintiff's Counsel Were Precluded from Other Opportunities ........................................ 12
4. Counsel Risked a Tremendous Amount of Time and Money ........................................ 12
5. Plaintiff Achieved a Phenomenal Result ........................................ 13
F. Plaintiff Is Entitled To An Award Of Non-Statutory Costs ........................................ 13
G. Plaintiff's Counsel Are Entitled to an Award of the "Fair Estimate" of Their Anticipated Additional Attorneys' Fees ........................................ 14
H. Plaintiff's Request For Judicial Notice ........................................ 14
IV. CONCLUSION ........................................ 17

## TABLE OF AUTHORITIES

### CASES


*A.D. v. Cal. Hwy. Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013)........................................................ 4

*Antoninetti v. Chipotle Mex. Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) .................................. 7

*Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) ..................................................................... 7

*Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) ..................................... 7

*Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ..................................................... 9

*Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984) ........................................................... 8

*Caldera v. Dept. of Corr. & Rehab.*, 48 Cal. App. 5th 601, 607 (2020) .......................................... 12

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ............................................... 9

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) ...................................... 6, 8, 10, 11

*Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002)....................................... 9

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ............................................................................ 6, 8

*Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc) ............................................... 8

*Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) ............................................................................ 13

*Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), opinion vacated in part on denial of reh'g, 984 F.2d 345 (9th Cir. 1993)................................................................. 6, 10

*Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 62-63 (2002) ............................................ 8

*Fox v. Vice*, 563 U.S. 826, 838 (2011)................................................................................................ 8

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ..................................................................... 6, 9

*Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013) ................................................. 9

*Graham v. DaimlerChrysler*, 34 Cal. 4th 553, 584 (2004)................................................................. 9

*Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994)............................................................... ii, 7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................... 6, 7, 11

*Horsford v. Bd. of Trustees*, 132 Cal. App. 4th 359, 396 (2005)........................................................ 9

*In re Kekauoha-Alisa*, 674 F.3d 1084, 1093-94 (9th Cir. 2012)......................................................... 4

*Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) ............................................................. 4, 13

*Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008)............................................................... 7

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ........ 6, 7, 8, 11, 12
*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995) ........ 6
*McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th Cir. 2009) ........ 11
*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989) ........ 9
*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ........ 1, 7, 8
*Nat'l Fed'n of the Blind v. Target Corp.*, Case No. 06-01802 MHP, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009) ........ 10
*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ........ 7
*Perfect 10, Inc. v. Giganews, Inc.*, (9th Cir. 2017) 847 F.3d 657, 676 ........ 14
*PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096 (2000) ........ 11
*Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) ........ 10
*Robles v. EDD*, 38 Cal. App. 5th 191, 205 (2019) ........ 9
*Rodriguez v. County of Los Angeles*, 891 F.3d 776, 800 (9th Cir. 2018) ........ 13
*Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 48 & n.23 (1977) ........ 7
*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ........ 6, 7, 8
*Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) ........ 7
*U.S. v. City and County of San Francisco*, 748 F. Supp. 1416, 1431 (N.D. Cal. 1990) ........ 10
*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ........ 10
*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ........ 12
*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) ........ 7

**STATUTES**

28 U.S.C. § 1920 ........ ii, 7, 13
42 U.S.C. § 1983 ........ ii, 5, 11
42 U.S.C. § 1988 ........ ii, 5, 6, 9, 11, 13
Cal. Civ. Code § 52.1(h) ........ ii, 5
Cal. Code Civ. Proc. § 1021.5 ........ 7

**RULES**

Fed. R. Civ. P. 54(d)(2)(B)(iii) ........ 14

Fed. R. Evid. 201 .......... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. OVERVIEW

Plaintiff Nicholas La Motte brought civil rights claims against CHP Officer J. Ray and CHP Sergeant J. Snider based on his arrest and the subsequent warrantless search of his bodily fluids on April 23, 2023. After extremely hard-fought litigation starting in October 2024, Plaintiff obtained a verdict for $5,000,000. As the prevailing party, Plaintiff is entitled to an award of reasonable attorneys' fees and costs. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid").

The breakdown of fees and costs Plaintiff's counsel seeks is as follows:

**Attorneys' Fees Incurred through September 25, 2026:**

| **Attorney** | **Hours** | **Rate** | **Total** |
|---|---|---|---|
| Izaak Schwaiger | 544.01 | $850 | $427,133.50 |
| John Houston Scott | 164.1 | $1,110 | $182,151.00 |
| Brian Gearinger | 23.3 | $985 | $22,950.50 |
| Denise Carroll (paralegal) | 110.23 | $200.00 | $22,046.00 |
| Michael Keck (paralegal) | 11.9 | $285 | $3,391.50 |
| | 852.54 | | **$657,672.50** |

As set forth more fully below, Plaintiff seek a 2.0 multiplier on their lodestar rates for Mr. Schwaiger ($427,133.50 + $427,133.50 = $854,267), and Mr. Scott ($182,151.00 + $182,151.00 = $364,302.00), for a total requested fee of **$1,266,957**.[1]

Further, Plaintiff requests non-statutory costs in the amount of $16,783.77.

Finally, Plaintiff requests an award of an additional $68,000, which represents a "fair estimate" of additional attorneys' fees that are reasonably anticipated in defense of any post-judgment motions or appeal.

[1] Plaintiff does *not* seek a multiplier for Mr. Gearinger's attorney's fees spent preparing this motion.

Plaintiff requests that judgment be amended to reflect the addition of these awards of fees and non-statutory costs, in addition to costs taxed by the clerk, and any interest and penalties awarded. *See* Dkt. 136.

## II. FACTS RELEVANT TO THIS MOTION

### A. Mr. Schwaiger's Decision To Represent Mr. La Motte Against The CHP Officers

On March 13, 2024, Plaintiff Nicholas La Motte contacted Izaak Schwaiger, Esq. Mr. La Motte claimed that he had been wrongly arrested for DUI by officers from the California Highway Patrol. Mr. La Motte told Mr. Schwaiger that he had contacted approximately ten other law firms prior to calling Mr. Schwaiger's office, and that no one would take his case. *See* Schwaiger Decl., ¶ 4.

Beginning in 2022, Mr. Schwaiger's office began receiving regular complaints and case inquiries regarding similar allegations of false arrest for DUI – all from the Santa Rosa office of the California Highway Patrol. In the two years prior to undertaking Mr. La Motte's representation, Mr. Schwaiger would estimate his office received no fewer than twelve such complaints. The consistency of these case inquiries was noteworthy: driver contacted by CHP on questionable pretense, negative breathalyzer results, driver arrested on a suspicion of driving "under the influence of drugs" anyway, driver taken to jail, no charges filed. Two of these inquiries were documented via email. *See* Exhibits A and B to Schwaiger Decl., ¶ 5.

If criminal charges *had* been filed, discovery through the criminal case would have given an attorney access to the CHP dashcam video, which would have been helpful in evaluating whether there was a case for false arrest. But without criminal charges, the CHP blanketly refuses to release any video, and because the allegation is one of driving under the influence of drugs (as opposed to alcohol), there is no corollary administrative action through the Department of Motor Vehicles that might be used as a mechanism for discovery. Even with a companion criminal or administrative action that might produce discovery, dashcam videos are, in Mr. Schwaiger's experience, only marginally helpful in evaluating what really happened on scene. The fixed

positioning of the camera, poor audio recording ability, and the practice of CHP officers performing field sobriety tests out of view of the camera limits a fair appraisal of the case. And because until very recently CHP did not use body-worn cameras, any case for false arrest brought against an officer would necessarily rely on the testimony of the driver, which would be guaranteed to be contradicted by the officers' reports and testimony. Ultimately without video evidence, Mr. Schwaiger had to turn away every person who came to my office having faced similar treatment from officers out of Santa Rosa's CHP office. *See* Schwaiger Decl., ¶ 5.

But when Mr. La Motte contacted Mr. Schwaiger's office, he claimed to have a video disproving some of the officers' claims, so Mr. Schwaiger agreed to meet him and review his materials. After reviewing Mr. La Motte's video, Mr. Schwaiger realized that there was enough evidence at the very least to cast doubt on the officers' claims. Of course that would not be enough to prevail on the case, but it is what made Mr. La Motte's case different from the others. Though success on the merits was far from guaranteed, Mr. Schwaiger believed that undertaking this case might have some deterrent effect on what he saw as department-wide misconduct. At the very least, the Santa Rosa CHP office would now know someone was paying attention. Mr. Schwaiger told Mr. La Motte that their likelihood of success was small, but that Mr. Schwaiger would take his case. Mr. Schwaiger told Mr. La Motte that he believed there could be value in the fight, regardless of the outcome. *See* Schwaiger Decl., ¶ 6.

**B. The La Motte Litigation**

Mr. Schwaiger's hopes for the case as impact litigation were put to bed shortly after Mr. La Motte's lawsuit was filed. From the outset, the Attorney General's position has been to poo-poo the case and to reflexively defend the officer defendants without question despite what Mr. Schwaiger considered obvious problems with their reports and testimony. In declining to participate in ADR, the defense's position was "there is no factual evidence that the Officer's actions were improper in any respect." *See* Schwaiger Decl., ¶ 7.

Certain aspects of this case were made more difficult than expected by the approach of the defense. Document requests to the individual defendants were returned unfulfilled with

statements from the defense that the State, not the individual defendants, possessed the items sought. But when Plaintiff subpoenaed those agencies for the documents sought, the subpoenas were ignored, leading to protracted discovery disputes which resolved only upon the threatened filings of discovery dispute letters or requests for an order to show cause. Issues which would normally be resolved through simple stipulations of the parties were not, such as admissibility of documents whose authenticity was never in dispute. The defense's interlocutory appeal from the District Court's denial of summary judgment was wholly without merit and filed only to delay the case and wear down the Plaintiff. This necessitated a motion from Plaintiff asking the Court to certify the appeal as frivolous. In granting that motion, Judge Gonzalez-Rogers found the defense's argument "lack[ed] merit," was "frivolous," and "so baseless that it does not invoke appellate jurisdiction," further noting that an email from the defense indicating the purpose of the appeal was "to delay the case" could be "cause for sanctioning defendants…" (ECF 58 at 2-3.) *See* Schwaiger Decl., ¶ 22.

### C. Settlement Negotiations[2]

In advance of the scheduled settlement conference with Magistrate Judge Westmore, on September 26, 2025, Plaintiff tendered a demand for settlement of $1.5 million. In contravention to the Court's standing order, Defendants did not respond at all to Plaintiff's demand. On October 8, 2025, Defendants replied that the parties were "too far apart to warrant a counter." On October 15, 2025, the defense offered Plaintiff a "waiver of costs" if he dismissed his case voluntarily. Viewing attendance at the settlement conference as pointless, the parties requested the settlement conference be vacated. While some limited and informal discussions continued, no additional offer from the defense was ever made. *See* Schwaiger Decl., ¶ 24.

//

---

[2] The Ninth Circuit permits consideration of settlement negotiations as evidence of the extent of the plaintiffs' success. *See A.D. v. Cal. Hwy. Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013); *In re Kekauoha-Alisa*, 674 F.3d 1084, 1093-94 (9th Cir. 2012); *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011). Mr. Scott was counsel for plaintiff in *A.D. v. Cal. Hwy. Patrol*.

**D. The Verdict**

The matter proceeded to trial on August 25, 2026. The jury reached its verdict on August 31, 2026, finding for Plaintiff on his Section 1983 claims against the individual defendants (and the absence of qualified immunity), and his Bane Act claims. Dkt. 121. The jury awarded Plaintiff $5 million in compensatory and punitive damages. *Ibid*.

The verdict in this case was an outstanding result by any measure, and it was the first time in Mr. Schwaiger's career that he obtained an award of punitive damages. Such an award reasonably stands as a total rejection of not only the defense's theory of the case, but of the Defendants' cavalier attitude toward the whole proceeding, including their persistent refusal to acknowledge the truth of what the jury ultimately viewed as indisputable evidence. The Verdict Form awarded $600,000 in compensatory damages and $1,250,000 in punitive damages against Defendant Ray for falsely arresting Plaintiff, $600,000 in compensatory damages and $500,000 in punitive damages against Defendant Ray for the unlawful search of Plaintiff, and $100,000 in compensatory damages against Defendant Ray for Plaintiff's Bane Act claim. *See* Exhibit D to Schwaiger Decl., ¶ 25.

The Verdict Form also records $600,000 in compensatory damages and $1,250,000 in punitive damages against Defendant Snider for falsely arresting Plaintiff, and $100,000 in compensatory damages against Defendant Snider for Plaintiff's Bane Act claim. *See* Exhibit D to Schwaiger Decl., ¶ 25.

Viewed holistically, this award serves the Section 1983's two-fold purposes of compensating Mr. La Motte for the actual harm suffered, and of deterring similar misconduct from those who would, with reckless or callous indifference to the rights of others, tread upon the most basic principles of liberty enshrined in our Constitution. *See* Schwaiger Decl., ¶ 25.

## III. LEGAL ARGUMENT

**A. As Prevailing Party, Plaintiff Is Entitled To Reasonable Attorneys' Fees**

As the prevailing party, Plaintiff is entitled to an award of fees and costs incurred by counsel. *See* 42 U.S.C. § 1988; Cal. Civ. Code § 52.1(h). Plaintiff also is entitled to all fees

incurred in preparing this motion. *Ketchum v. Moses*, 24 Cal.4th 1122, 1133–1134 (2001) ("an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee"); *Davis v. City and County of San Francisco* (9th Cir. 1992) 976 F.2d 1536, 1544, opinion vacated in part on denial of reh'g (9th Cir. 1993) 984 F.2d 345 ("time spent by counsel in establishing the right to a fee award is compensable"); *Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 ("Prevailing parties are compensated for hours reasonably spent on fee-related issues.").

The purpose of Section 1988 is to allow civil rights plaintiffs, who often cannot afford attorneys in the private market, to pursue meritorious lawsuits, and to encourage skilled attorneys to take such cases. *See generally City of Riverside v. Rivera*, 477 U.S. 561, 576-77 (1986).

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Id*. at 440.

The starting point of the analysis of a fee calculation is the "lodestar," which is the hours counsel reasonably expended on the matter multiplied by a reasonable hourly rate. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The court may then adjust the figure based on certain factors, but when a plaintiff prevails on *both* federal and state law claims that allow recovery of fees, the district court should apply the more generous state law factors, including the contingent risk, which justifies an upward multiplier of the lodestar. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995).

A prevailing plaintiff may also seek, as part of the reasonable fee, reasonably incurred out-of-pocket expenses even though not taxable under 28 U.S.C. Section 1920. *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994).

**B. Plaintiff's Lodestar Request**

The lodestar method is the "guiding light" for determining fees in civil-rights cases. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542,551 (2010) (citation omitted); *see also Hensley v. Eckerhart,* 461 U.S. 424,432,434 (1983) ("[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *see, e.g., Vogel v. Harbor Plaza Ctr., LLC,* 893 F.3d 1152, 1158 (9th Cir. 2018); *Antoninetti v. Chipotle Mex. Grill, Inc.,* 643 F.3d 1165, 1176 (9th Cir. 2010); *accord Ketchum v. Moses,* 24 Cal. 4th 1122, 1135-36 (2001) (holding lodestar-multiplier method should be used to determine reasonable fee award in cases involving a fee-shifting statute such as Section 1021.5); *Serrano v. Priest ("Serrano III"),* 20 Cal. 3d 25, 48 & n.23 (1977).

To calculate the lodestar, courts multiply the number of hours reasonably expended by counsel's reasonable hourly rates. *See Hensley,* 461 U.S. at 433-34; *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008); *Serrano III,* 20 Cal. 3d at 48. There is a strong presumption that the lodestar amount represents a reasonable fee. *Stanger v. China Elec. Motor, Inc.,* 812 F.3d 734, 738 (9th Cir. 2016). A prevailing plaintiff should generally recover their lodestar "unless special circumstances would render such an award unjust." *Jankey v. Poop Deck,* 537 F.3d 1122, 1130 (9th Cir. 2008) (quotation marks omitted) (quoting *Barrios v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134 (9th Cir. 2002)); *Serrano v. Unruh,* 32 Cal. 3d 621, 639 (1982).

**C. The Hours Claimed by Plaintiff's Counsel Are Reasonable**

A prevailing plaintiff is entitled to be compensated for "every item of service" that a reasonable lawyer would have performed to protect the client's interest. *Armstrong v. Davis,* 318 F.3d 965, 971 (9th Cir. 2003) (citation omitted); *see also Hensley,* 461 U.S. at 435 (Attorneys who obtain excellent results in the public interest "should recover a fully compensatory fee.

Normally this will encompass all hours reasonably expended on the litigation .... “); *Ketchum,* 24 Cal. 4th at 1133. Moreover, the Ninth Circuit has instructed district courts to “defer to the winning lawyer[s’] professional judgment as to how much time [they were] required to spend on the case.” *Chaudhry v. City of Los Angeles,* 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Moreno,*534 F.3d at 1112).

The litigation of this case was extremely hard-fought, complicated, and drawn-out, largely due to the tactics of the defense. Schwaiger Decl., ¶ 22. “[A party] ‘cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.’” *Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*); *Burgess v. Premier Corp*., 727 F.2d 826, 841 (9th Cir. 1984) (“[A]lthough [defendants] had the right to play hardball in contesting [plaintiffs’] claims, it is also appropriate that [defendants] bear the cost of their obstructionist strategy.”).

Further, Defendants could have avoided liability for much of the Plaintiff’s fees had they litigated in a less aggressive manner or simply made a reasonable settlement offer early. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 62-63 (2002) (“Fee-shifting simply requires the party that creates the costs to bear them.”); *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (“[P]etitioners could have avoided liability for the bulk of the attorney’s fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner.”). Plaintiff offered to settle this matter for $1.5 million one year ago. Schwaiger Decl., ¶ 24.

Here, Izaak Schwaiger and John Houston Scott, who both worked on the case since the beginning, have carefully and contemporaneously tracked the time spent on the case. *See* Scott Decl., ¶ 24 and Schwaiger Decl., ¶ 17. Mr. Gearinger and Mr. Keck have carefully and contemporaneously tracked all of his time spent preparing this motion. *See* Gearinger Decl., ¶ ¶13 and 14. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (“The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection.”).

In determining reasonable hours, “the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are

erroneous." *Horsford v. Bd. of Trustees*, 132 Cal. App. 4th 359, 396 (2005). "An attorney's sworn testimony that, in fact, it took the time claimed ' . . . is evidence of considerable weight on the issue of the time required . . . . [Citation omitted.]." *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1081 (N.D. Cal. 2010).[3] Counsel has submitted evidence supporting the hours spent as reasonable and necessary to the litigation.

**D. Plaintiff's Counsel's Requested Rates Are Reasonable**

The Court determines the reasonableness of hourly rates by considering the prevailing market rates for attorneys of similar skill and experience conducting similar work in the Bay Area community. *See Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973,979 (9th Cir. 2008). The "relevant legal community" is the forum district for the action in which fees are sought. *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992). "[T]he fee applicant has the burden of producing 'satisfactory evidence' that the rates he requests meet these standards." *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1206 (9th Cir. 2013) (citation omitted). California law is similar: Plaintiff's attorneys are entitled to their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002).

Courts will typically use the rates that apply when the fees are awarded, rather than when the services are rendered to account for the delay in payment. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989) ("[A]n appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [Section 1988]."); *Graham v. DaimlerChrysler*, 34 Cal. 4th 553, 584 (2004) (stating that the trial court need not award interest on the fees "if the lodestar rate is based on the present hourly rate rather than the lesser rate applicable when the services were rendered"); *Robles v. EDD*, 38 Cal. App. 5th 191, 205 (2019).

---

[3] Mr. Gearinger was co-counsel for Plaintiff Charles Blackwell in this matter before The Honorable Marilyn Hall Patel.

In addition to Plaintiff's counsels' own declarations, Plaintiff submits extensive additional evidence supporting their requested rates. *See generally* Declarations of William Cohan and Sanjay Schmidt. "Affidavits of the plaintiff's attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff requests that the Court award fees at Mr. Scott's requested hourly rate of $1,110, which is at the lower end of a reasonable fee with a trial attorney with the track record of success that Mr. Scott has achieved. *See* Scott Decl., ¶¶ 4-8. Similarly, Mr. Gearinger's requested rate of $985 per hour, and Mr. Schwaiger's requested rate of $850 per hour, are within the range of reasonable rates charged by attorneys of comparable skill and experience handling similarly complex federal litigation – again reflecting the respective achievement of Messrs. Gearinger and Schwaiger. *See* Gearinger Decl., ¶¶ 5-9 and Schwaiger Decl., ¶ 11. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) ("Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter."); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1547 (9th Cir. 1992), affirming *U.S. v. City and County of San Francisco*, 748 F. Supp. 1416, 1431 (N.D. Cal. 1990) (plaintiff's attorneys entitled to rates charged by "corporate attorneys of equal caliber").

Likewise, Mr. Keck's unique background as a former attorney supports his requested rate of $285 per hour for his work as Mr. Gearinger's legal assistant. *See* Gearinger Decl., ¶ 14. And similarly, Ms. Carroll's background as an experienced paralegal supports her requested rate of $200 per hour for her work as Mr. Schwaiger's legal assistant. *See* Schwaiger Decl., ¶ 20.

**E. The Applicable Factors Justify a Significant Multiplier**

Plaintiff also requests that this Court apply a 2.0 lodestar enhancement for their work on the matter. "[W]hen a plaintiff succeeds on both federal and state claims that support a fee award,

the state-law multiplier is available." *Chaudhry, supra*, 751 F.3d at 1112; *see also Nat'l Fed'n of the Blind v. Target Corp*., Case No. 06-01802 MHP, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009) ("When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk."). Among the factors that courts consider in determining whether and to what degree to award a multiplier to the lodestar fee are "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum, supra*, 24 Cal.4th at1132.

Another factor is the degree of success obtained. *Chaudhry v. City of Los Angeles, supra*, 751 F.3d at 1110 ("The court may then adjust the lodestar amount based on several factors, including the degree of success achieved by the prevailing party. [Citation.]"); *Hensley v. Eckerhart*, *supra*, 461 U.S. at 440 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988."); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096 (2000) ("The trial court makes its determination after consideration of a number of factors, including . . . the amount involved . . . [and] the success or failure . . .."); *McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th Cir. 2009) ("The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff.").

***1. The Case Was Difficult and Presented Many Novel and Complex Questions***

A review of the filings in the case, the numerous motions on various constitutional and procedural issues, and the comments by the Court demonstrate just how difficult and complex this case has been. Plaintiff has also submitted declarations from respected attorneys who practice before this Court who agree that Section 1983 cases against law enforcement are some of the more difficult and complicated cases to handle for plaintiff attorneys. *See generally* Declarations of William Cohan and Sanjay Schmidt. Plaintiff's counsel understood the difficulty of (1)

accepting Plaintiff's representation, and (2) taking this case to trial. *See* Schwaiger Decl., ¶¶ 4-7 and 22. The difficulty of the case weighs heavily in favor of a substantial increase in the lodestar figure.

**2. *Plaintiff's Counsel Exhibited a High Level of Skill***

Plaintiff's counsel had to navigate the many defenses, immunities, and other challenges in this matter to not only get the case to trial but also to secure an excellent verdict. Counsel points to his success in defeating Defendants' motion for summary judgment as well as being "the point person for every interaction with the Court, with defense counsel, and ultimately the jury." *See* Schwaiger Decl., ¶¶ 19 and 22. Plaintiff also submits declarations from colleagues who attest to the skill of the attorneys in this case. *See generally* Declarations of William Cohan and Sanjay Schmidt. This factor also weighs in favor of an enhancement to the lodestar.

**3. *Plaintiff's Counsel Were Precluded from Other Opportunities***

Mr. Schwaiger turned away other work due to his involvement in this matter. *See* Schwaiger Decl., ¶¶ 15 and 17. The inability to pursue these other opportunities weigh in favor of a lodestar enhancement.

**4. *Counsel Risked a Tremendous Amount of Time and Money***

"'[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider….'" *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001) (italics in orig.); *see also Caldera v. Dept. of Corr. & Rehab*., 48 Cal.App.5th 601, 607 (2020) ("In most contingency cases, courts may then increase the lodestar amount by applying a multiplier."); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048 (9th Cir. 2002) (Exceptional results in the face of vigorous opposition and in the absence of supporting precedent militate in favor of higher multiplier values.). "'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services'" *Ketchum*, 24 Cal.4th at 1132, citing Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567.

Here, Plaintiff's counsel will only get paid if there is a recovery in the case. *See* Schwaiger Decl., ¶¶ 14-15 and Scott, ¶ 25. Meanwhile, Plaintiff's trial team has expended more than 708 total hours, valued at $609,284.50. *See* Ex. C to Schwaiger Decl., ¶ 17 and Ex. C to Scott Decl., ¶ 24. In addition, Plaintiff's counsel has advanced $11,341.06 in costs (ECF 137) and $16,783.77 in non-statutory costs. *See* Ex. E to Schwaiger Decl., ¶ 26.

The major risk undertaken by Plaintiff's counsel justifies a significant multiplier. *See Rodriguez v. County of Los Angeles*, 891 F.3d 776, 800 (9th Cir. 2018) (affirming district court's application of 2.0 multiplier where, *inter alia*, "the substantial financial risk that appellees' counsel assumed in investing $3.4 million of attorney time in a contingency case").

### *5. Plaintiff Achieved a Phenomenal Result*

This was a tremendous result for the Plaintiff, and it was extremely difficult to achieve considering the challenge of getting jurors to understand how severely Plaintiff was damaged by the Defendants' actions. This required Plaintiff's counsel to dismantle each of the myriad defenses, excuses, justifications, and even red herrings the defense raised. Plaintiff's counsel also had to show the jury how Defendants' actions also constituted a violation of California's Bane Act. *See* to Schwaiger Decl., ¶ 25.

The level of success is also evidenced by Defendants' settlement offers in the case. *See Ingram v. Oroudjian, supra*, 647 F.3d at 927 (finding negotiations relevant to district court's evaluation of level of success as factor in award of fees). Defendants' only offer (after conveying to Plaintiff's counsel that the case was meritless) was for a waiver of costs. *See* to Schwaiger Decl., ¶ 24.

## F. Plaintiff Is Entitled To An Award Of Non-Statutory Costs

Plaintiff submitted a Bill of Costs to recover $11,341.06 in costs covered by 28 U.S.C. Section 1920. ECF 137. However, Plaintiff is also entitled to an award of out-of-pocket expenses that would normally be charged to a fee-paying client, so long as reasonable, as part of the fee award under 42 U.S.C. Section 1988. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005). As set forth by Plaintiff's counsel's declaration, counsel incurred $16,783.77 in non-statutory costs,

which were all reasonable and necessary to the handling of this matter to successful verdict. *See* Ex. E to Schwaiger Decl., ¶ 26.

**G. Plaintiff's Counsel Are Entitled to an Award of the "Fair Estimate" of Their Anticipated Additional Attorneys' Fees**

Plaintiff understands that he is required to "state the amount [of attorneys' fees] sought or provide a *fair estimate* of it…." Fed. Rules Civ. Proc., rule 54(d)(2)(B)(iii); italics added. *See also Perfect 10, Inc. v. Giganews, Inc.* 847 F.3d 657, 676 (9th Cir. 2017) ("at minimum [Rule 54] requires a party to 'provide a fair estimate' of the amount of fees sought"). Plaintiff, however, requests the Court permit them to supplement Plaintiff's Motion for Attorneys' Fees and Costs at the conclusion of post-trial motions. This will allow Plaintiff's counsel to submit accurate and exact billing records, rather than estimates. *See* Gearinger Decl., ¶ 15.

Alternatively, Plaintiff provides the following fair estimate of their anticipated additional attorneys' fees. First, Plaintiff anticipates that Defendants vigorously will oppose Plaintiff's Motion for Attorneys' Fees as well as make various post-trial motions. This will require further research, briefing, and oral argument. As such, Plaintiff estimates that counsel will incur an additional $68,000 in attorneys' fees on the remaining post-trial matters. *See* Schwaiger Decl., ¶ 27.

**H. Plaintiff's Request For Judicial Notice**

Pursuant to Rule 201 of the Federal Rules of Evidence, Plaintiff requests that the Court take judicial notice of the following documents in support of Plaintiff's Motion for Attorneys' Fees.

1. The report of Special Master Matthew Borden, Esq., filed June 30, 2023, in the case of *Loggervale v. County of Alameda*, Case No. 3:20-cv-04679-WHA, DKT. 311. A true copy is attached as Exhibit A.

2. The order of the Honorable William Alsup, filed September 14, 2023, in the case of *Loggervale v. County of Alameda*, Case No. 3:20-cv-04679-WHA, DKT. 333. A true copy is attached as Exhibit B.

3. The Declaration of Paul. M. Secunda in Support of Plaintiff's Motion for Attorneys' Fees, filed October 10, 2025, in the case of *Nado v. John Muir Health*, Case No. 4:24-cv-01632-AMO DKT. 58-2. A true copy is attached as Exhibit C.

4. The Declaration of Court Appointed Counsel Justin A. Nelson in Support of Plaintiff's Motion for Attorney's Fees, filed December 3, 2025, in the case of *Bartz v. Anthropic PBC*, Case No. 4:24-cv-05417-AMO, DKT. 505-1. A true copy is attached as Exhibit D.

5. The order of the Honorable Richard Seeborg filed December 4, 2025, in the case of *Curran v. City of Oakland*, Case No. 23-cv-02354-RS, DKT. 57. A true copy is attached as Exhibit E.

6. The order of the Honorable Araceli Martinez-Olguin, filed January 12, 2026, in the case of *Nado v. John Muir Health*, Case No. 4:24-cv-01632-AMO, DKT. 63. A true copy is attached as Exhibit F.

7. The Declaration of Steven Shepard in Support of Plaintiffs' Motion for Fees, filed March 30, 2026, in the case of *Rodriguez v. Google LLC*, Case No 3:20-cv-04688-RS, DKT. 739-4. A true copy is attached as Exhibit G

8. The order of the Honorable Araceli Martinez-Olguin, filed July 20, 2026, in the case of *Bartz v. Anthropic PBC*, Case No. 4:24-cv-05417-AMO, DKT. 680. A true copy is attached as Exhibit H.

9. The order of the Honorable Richard Seeborg filed August 8, 2026, in the case of Rodriguez v. Google LLC, Case No 3:20-cv-04688-RS, DKT. 1010. A true copy is attached as Exhibit I.

Plaintiff provides the following table, which reflects hourly rates approved in the Northern District of California from September 14, 2023 through August 28, 2026.

//

| Date | Case | Approved Hourly Rates by Admission to Practice Year |
|---|---|---|
| 9/14/2023 | *Loggervale v. County of Alameda*<br>Case No. 3:20-cv-04679-WHA<br>*See* Exhibits A and B to Request for Judicial Notice ("RJN") | 1990 : $850<br>1996 : $950<br>2006 : $700 |
| 12/4/2025 | *Curran v. City of Oakland*<br>Case No. 3:23-cv-02354-RS<br>*See* Exhibit E to RJN | 1977 : $1,150<br>1993 : $1,350<br>2008 : $1,125 |
| 1/12/2026 | *Nado v. John Muir Health*<br>Case No. 4:24-cv-01632-AMO<br>*See* Exhibits C to F | 1982 : $1,150<br>2000 : $900<br>2010 : $1,200 |
| 7/20/2026 | *Bartz v. Anthropic PBC*<br>Case No. 4:24-cv-05417-AMO<br>*See* Exhibits D to H | 1990 : $2,300<br>2000 : $2,250<br>2008 : $1,100 |
| 8/28/2026 | *Rodriguez v. Google LLC*<br>Case No. 3:20-cv-04688-RS<br>*See* Exhibits G to I | 1988 : $4,000<br>1998 : $1,800<br>2009 : $1,500 |

The *Loggervale* case is the closest analogous case to the present case – civil right violations for three women of color who were unlawfully detained for 90 minutes, versus civil rights violations for a young man of color who was unlawfully arrested and jailed. As set forth in the table above, the hourly rates requested by Plaintiff's counsel reflect an appropriate increase for rates approved in the *Loggervale* case over the intervening three years. In addition, the hourly rates requested by Plaintiff's counsel are *less than* the approved rates in the four comparable cases decided after the *Loggervale* case.

## IV. CONCLUSION

As set forth in greater detail above, Plaintiff requests (1) an award of reasonable attorneys' fees in the amount of $1,266,957 (which includes a 2.0 multiplier applied to the lodestar fee), (2) an award of non-statutory costs of $16,783.77, and (3) an award of an additional $68,000, which represents a "fair estimate" of additional attorneys' fees.

Dated: September 28, 2026

SCHWAIGER LAW FIRM
and
GEARINGER LAW GROUP
and
SCOTT LAW FIRM

*/s/ Brian Gearinger*
By: BRIAN GEARINGER
Attorneys for Plaintiffs