Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
2901 Cleveland Avenue, Suite 201
Santa Rosa, CA 95403
Tel. (707) 595-4414
Facsimile: (707) 581-1983
E-mail: izaak@izaakschwaiger.com

Brian Gearinger, SBN 146125
**GEARINGER LAW GROUP**
115 4th Street, Suite C
Santa Rosa, California 95401
Telephone: (415) 440-3102
E-mail: brian@gearingerlaw.com

John H. Scott, SBN 72578
**SCOTT LAW FIRM**
2767 Dyer Avenue
Sebastopol, CA 95472
Telephone: (415) 377-3054
E-mail: john@scottlawfirm.net

Attorneys for the Plaintiff NICHOLAS LA MOTTE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NICHOLAS LA MOTTE,

Plaintiff,

v.

CHP Officer J. RAY (22362), CHP Sergeant J. SNIDER (17419), and DOES 1-25, inclusive.

Defendants.

Case No. 4:24-cv-07249-AMO

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL**

Date: November 5, 2026
Time: 2:00 p.m.
Location: Courtroom 5, 2nd Floor, Oakland
Judge: Hon. Araceli Martínez-Olguín

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1
II. APPLICABILITY OF SANCTIONS ........ 1
III. BACKGROUND ........ 3
IV. ARGUMENT ........ 4
A. The Rule 50 motion fails on procedure and on the evidence ........ 4
i. Applicable law ........ 4
ii. Qualified immunity was waived ........ 5
iii. Probable cause was disputed, and the jury was allowed to disbelieve the officers ........ 8
iv. The punitive-damages Rule 50 motion was not preserved, and the evidence of malice was not "none" ........ 11
B. The strip search was not news, and it was not perjury ........ 12
i. Plaintiff did not testify to a physical cavity search ........ 13
ii. There was no diligence, and the material is not new ........ 16
iii. The juror statements are inadmissible ........ 17
V. CONCLUSION ........ 18

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

# TABLE OF AUTHORITIES

## CASES

*Act Up!/Portla*nd v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) .................................................. 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) .................................................. 8, 11

*Bell v. Wolfish*, 441 U.S. 520, 558 n.39 (1979) .................................................. 15

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987) ............ 13

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009) .................................................. 5, 12

*Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 324 (2012).................................................. 15

*Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) .................................................. 4, 12

*Johnson v. Jones*, 515 U.S. 304 (1995).................................................. 7

*Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) .................... 5

*Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) .................................................. 13

*Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) .................................................. 11

*McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).................................................. 11

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................. 7

*Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) .................................................. 5

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) ............... 3

*New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).................... 2

*Ortiz v. Jordan*, 562 U.S. 180, 188 (2011).................................................. 7, 8

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) .................................................. 13

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).......................... 5, 8, 11

*Rohn v. United States*, 2002 U.S. Dist. LEXIS 19122, *13 .................................................. 3

*Tanner v. United States*, 483 U.S. 107, 119-21 (1987).................................................. 17

*Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir. 2008).......................................... 7

*United States v. Fowlkes*, 804 F.3d 954, 959 (9th Cir. 2015) .................................................. 15

*United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) .......................................... 11

*Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404-405 (2006)..................................... 7

*Warger v. Shauers*, 574 U.S. 40, 44-51 (2014)........................................................ 17

**STATUTES**

28 U.S.C. § 1927........................................................................................ 1

Bane Act........................................................................................ 1, 3

**RULES**

**Fed. R. Civ. P. 50**........................................................................ 4, 8, 11

Fed. R. Civ. P. 50(a)........................................................ 1, 3, 4, 5, 6, 11, 12, 18

Fed. R. Civ. P. 50(b) ........................................................ 3, 4, 5, 6, 7, 12

Fed. R. Civ. P. 56 ........................................................................ 4

Fed. R. Civ. P. 59 ........................................................................ 12

Fed. R. Evid. 602 ........................................................................ 16

Fed. R. Evid. 606(b)........................................................ 2, 17, 18

Fed. R. Evid. 606(b)(1) ........................................................................ 17

Fed. R. Evid. 801(c) ........................................................................ 16

Fed. R. Evid. 802 ........................................................................ 16

Fed. R. Evid. 803(7)........................................................................ 16

Fed. R. Evid. 803(10)........................................................................ 16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50 advisory committee's notes to the 1991 amendments ........................ 4

Fed. R. Civ. P. 50 advisory committee's notes to the 2006 amendments ........................ 5

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

## I. INTRODUCTION

The jury watched the video of Mr. La Motte's detention and arrest, heard the testimony of the Plaintiff and the Defendants, received ten trial exhibits, and considered the testimony of experts. After considering all of the evidence and argument at trial and the instructions of the Court, the jury found that the defendants arrested Mr. La Motte without probable cause, that the subsequent search was unlawful, that the defendants violated the Bane Act, and that there was sufficient evidence of reckless or conscious disregard of Mr. La Motte's rights to award punitive damages against both defendants. Defendants now ask the Court to throw that verdict out on four baseless grounds:

(1) a qualified immunity defense the Court already twice held waived by Defendants' failure to raise it in the Pretrial Conference Statement;

(2) a probable cause argument that ignores or misrepresents the evidence introduced at trial and presupposes the jury accepted only the defendants' version on the facts;

(3) a "new evidence" theory that dishonestly rewrites a visual strip search into a "physical" cavity search that Plaintiff never described;

(4) and a punitive damages argument not previously made under Rule 50(a) which is entirely unsupported by any citation to the record or applicable law.

Defendants' frivolous motion uniformly misstates the record and does so in such a consistent, material and repeated manner as to call into question the good faith of their pleading, thus supporting an award of sanctions under 28 U.S.C. § 1927. Their motion should be denied.

## II. APPLICABILITY OF SANCTIONS

Section 1927 reaches an attorney who multiplies the proceedings unreasonably and vexatiously, and it makes the attorney personally liable for the excess costs and fees. The statute provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

the statute must be supported by a finding of subjective bad faith. Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent. *New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). No safe-harbor notice is required, and the Court may consider the request on this opposition.

Defense counsel has multiplied this case with a motion that the record will not bear. Qualified immunity was refused on the record, twice, as waived. But Defendants' brief tells the Court that the issue was taken under submission. Their brief repeatedly mischaracterizes the strip search as a physical anal cavity search, then accuses Plaintiff of committing perjury in his description of it. Defense counsel says Plaintiff testified at his deposition only that he was strip searched and received a "hernia exam." But such is nowhere in the record. Then defense counsel attempts to impeach the verdict with his own account of what three jurors said they weighed, but Federal Rule of Evidence 606(b) expressly forbids such evidence. A juror may not testify about the effect of anything on a vote or about a juror's mental processes, and the Court may not receive a lawyer's retelling of it. No exception applies.

A post-verdict motion that ignores a waiver the Court already twice pronounced, that is based on false allegations of perjury the transcript does not contain, which repeatedly and intentionally mischaracterizes the record while relying on evidence the law expressly forbids is a multiplication of the proceedings. Plaintiff asks that the motion be denied and that defense counsel be ordered to pay the excess fees reasonably incurred in opposing it. Plaintiff will submit the hours necessary to rebut the defense's motion within fourteen days of the Court's order.[1][2]

---

[1] This is not the first time defense counsel's conduct in this case has drawn such a concern. Order Granting Plaintiff's Motion to Certify Defendants' Appeal as Frivolous, February 26, 2026 ECF 58 at 3 n.3. "On reply, plaintiff also asks the Court to award him reasonable attorneys' fees and costs in opposing the appeal and bringing the instant motion due to defendant's alleged bad faith in seeking to delay trial. In support, plaintiff cites defense counsel's email stating, 'my client may want me to at least try to get a writ to delay the case.' <u>Although there may be cause for sanctioning defendants, the Court declines to order sanctions at this juncture</u>." (Emphasis added.)

[2] Plaintiff is aware that should he prevail against Defendants' post-verdict efforts he would be

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

## III. BACKGROUND

Plaintiff brought claims of false arrest, unlawful search, and violations of the Bane Act arising from an April 25, 2023 traffic stop on Highway 101. Plaintiff contended at trial that Defendants Jayce Ray and John Snider arrested him and caused him to be searched without probable cause. Defendants contended that the arrest and subsequent search were lawful and supported by probable cause.

Opening statements were given on August 25, 2026. On August 28, after Plaintiff rested, defense counsel moved for a directed verdict "on the basis of qualified immunity." The Court stated that qualified immunity "isn't on the table," that defendants had "already waived the ability to raise it," and that the Court was "not going to welcome any further motions on qualified immunity because you let that go." RT vol. 4, 658:19-659:7. Counsel then moved on probable cause. The Court took that Rule 50(a) motion under advisement and joined it to any later Rule 50(b) motion. *Id.* at 659:8-16. After both sides rested, counsel renewed his motion on both grounds. The Court again stated, "for the record," that "the problem with the qualified immunity basis for the motion is that that was already waived by not having been reserved" in the pretrial conference statement. *Id.* at 736:8-22. The defense did not present any other grounds for their motion, including the issue of punitive damages. *Id.* at 658:19-659:16.

During trial, Mr. La Motte testified that he was subjected to a strip search at the Sonoma County jail after being booked. La Motte testified that after Ray told jail staff, "We got a DUI drugs," correctional officers required him to remove all his clothes in front of them, bend over, spread his cheeks, squat and cough, and lift his genitals. RT vol. 4, 641:10-643:18. Mr. La Motte

---

entitled to fees and costs on this opposition anyway. But the point of sanctions is to deter baseless filings, not to compensate the other side. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Failure to sanction attorney misconduct risks sending a signal to other attorneys that this court will not disapprove of this type of practice. *Rohn v. United States*, 2002 U.S. Dist. LEXIS 19122, *13. This Court has already declined sanctions once, "at this juncture," in its Order certifying the interlocutory appeal as frivolous. But defense counsel did not get the message. A second declination to sanction after such notice risks communicating tacit approval of the misconduct.

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

called it a strip search. He did not testify that anyone penetrated him. Opening statement said he "had to be strip-searched" and "had to have people look in his body cavities." RT vol. 1, 145:1-2. At his September 15, 2025 deposition – a year before trial – Plaintiff described the same event, putting Defendants on plain notice of the claim. "Well, I had to show him my private parts and drop my balls too to be – in layman's terms. Excuse my language. But that's what they told me to do. And I had to bend over and squat and cough. And yeah, it is pretty humiliating as a man. I don't think you would like that." Exhibit B to Emmons Decl., 139:22-140:4 (crosstalk omitted).

At trial the jury considered each of Plaintiff's claims and on August 31, 2026, returned a verdict for plaintiff on all counts, awarding Plaintiff $2 million in compensatory damages, and upon finding that the defendants acted with "malice, recklessness, oppression, or a conscious or reckless disregard for the rights of Mr. La Motte" imposed an additional $3 million in punitive damages.

## IV. ARGUMENT

### A. The Rule 50 motion fails on procedure and on the evidence.

#### i. Applicable law.

Defendants fail to offer the applicable standard for their motion or cite to any part of Rule 50 even a single time. They instead cite to Rule 56, which concerns summary judgment, and which is entirely inapplicable here. A motion for judgment as a matter of law following a verdict is governed by Rule 50(b). A Rule 50(b) motion is not a freestanding motion, rather, it is a renewed Rule 50(a) motion. Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before the case is submitted to the jury. If the court denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b). But because it is a renewed motion, a Rule 50(b) motion is limited to only those grounds asserted in the Rule 50(a) motion. A party may not "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 advisory committee's notes to the 1991 amendments ("A post-trial

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

motion for judgment can be granted only on grounds advanced in the pre-verdict motion.")); *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir.1990) ("Judgment notwithstanding the verdict is improper if based upon grounds not alleged in a directed verdict motion." (Cleaned up.)); *see also* Fed. R. Civ. P. 50 advisory committee's notes to the 2006 amendments ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."); *and see E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009) (reaffirming the authorities above).

Judgment as a matter of law is proper only if, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences for the nonmoving party, the evidence permits only one reasonable conclusion. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001); Fed. R. Civ. P. 50(a). Credibility determinations are for the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

**ii. Qualified immunity was waived.**

While the defense attempted to raise the issue of qualified immunity in the 50(a) motion, the Court precluded such argument entirely, finding that the issue had been waived because it had not been reserved in the pretrial conference statement. RT vol. 4, 658:22-659:7; 736:19-22. While the Defendants' brief tells the Court the opposite: that the directed verdict motions on immunity and probable cause were both "taken under submission," (ECF 145-1 at 3) that is not what happened. This is what happened:

> **MR. EMMONS:** Your Honor, at this time, the defense moves for a directed verdict on the basis of qualified immunity.
>
> **THE COURT:** So let's talk about that, Mr. Emmons. As we discussed at the pretrial conference, qualified immunity isn't something that you left as a question for the Court to take up. So as I mentioned at the pretrial conference, qualified immunity isn't on the table. I understand if you want to make your record on it, but I've told you at that point that you had already waived the ability to raise it at that

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

point. So if you want to make a 50(a) motion on some other basis, I'll accept that, but I'm not going to welcome any further motions on qualified immunity because you let that go. RT Vol. 4, 658:19-659:7.

The Court's Pretrial Order No. 1, issued on March 16, 2026, commanded the parties that "[i]n lieu of preparing a Joint Pretrial Conference Statement, the parties shall meet and confer by phone or in person, and then prepare and file a jointly signed Proposed Final Pretrial Order that contains: (a) *a brief description of the substance of claims and defenses which remain to be decided…*" (ECF 62, p. 1)(emphasis added.)

On April 23, 2026, the parties submitted their Joint Pretrial Conference Statement. The sum total of the defenses raised therein were: "Defendants allege that Plaintiff's arrest was supported by probable cause to believe he was driving under the influence of drugs, and that the subsequent searches were lawful." (ECF 69, p. 1.) In failing to raise the immunity issue in the pretrial conference statement, Defendants waived qualified immunity as a "defense which remains to be decided." Accordingly, it was disallowed as a part of the defense's Rule 50(a) motion and may not now be raised as part of their Rule 50(b) motion.

Aware of the defect, the defense now suggests that the inclusion of qualified immunity as a defense in their answer to the Complaint and in their motion for summary judgment should allow them to bypass the Court's Pretrial Order and have the issue preserved despite not having raised it for trial. (ECF 145-1, p. 2.) They state that "[t]he Court denied the motion [for summary judgment] on the basis of Qualified Immunity by claiming there was a dispute of fact as to probable cause requiring a trial." *Id.* Then they attempt to shoehorn qualified immunity back into a trial issue by arguing that "Defendants included probable cause as a possible issue for resolution at trial so they could get a ruling on that issue of Qualified Immunity." *Id.* That argument is not credible.

Pleading immunity in an answer, then losing the issue on summary judgment because of disputed facts, does not preserve it for a post-verdict motion after the Court has held the issue waived for trial. "No procedural principle is more familiar to this Court than that a . . . right may

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404-405 (2006). Defendants cannot use Rule 50(b) to relitigate a defense the Court has deemed waived.

But even if such were not the case, Defendants' immunity argument fails on its own terms. It is nothing more than the probable cause argument cloaked in a new name. If the officers' observations were disputed – and they were – immunity is not a pure question of law and therefore not a valid basis for judgment as a matter of law. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir. 2008).

Reinforcing this point, the defense has never argued – at summary judgment or elsewhere – that the law at issue was not clearly established at the time. (ECF 44.) Their argument has only ever been that qualified immunity should attach because the officers, taken at their word, "behaved reasonably." *Id.* Nor do they now argue that the law was not clearly established. They only relitigate probable cause and call it qualified immunity. But as the District Court held at summary judgment, the issue of probable cause was not so clear cut as the defense made it out to be. The Court found the case presented "classic factual disputes for a jury to decide," that "plaintiff has proffered evidence that the defendants' argument that probable cause existed to believe that plaintiff was driving under the influence is both false and pretextual," and that "[t]oxicology evidence also indicates that the officers' narrative may not be true." (ECF 48, p. 2.)

The summary judgment denial was also the defendants' chance to take the immunity question further, and they walked away from it. Following the court's denial of qualified immunity at summary judgment, Defendants noticed an interlocutory appeal, No. 26-373. But on February 26, 2026, the Court certified that appeal as frivolous. (ECF 58.) The order held that the appeal sought review of a genuine-issue-of-fact determination, which *Johnson v. Jones*, 515 U.S. 304 (1995), and *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011), make unreviewable, and that the appeal was "so baseless that it [did] not invoke appellate jurisdiction." (ECF 58 at 3.) Defendants then moved to dismiss their own appeal. The Ninth Circuit granted that motion on May 19, 2026, and issued mandate. A voluntary dismissal is an abandonment of the only appeal *Mitchell v.*

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

*Forsyth*, 472 U.S. 511 (1985) gave them from the denial of immunity at summary judgment. After trial, they cannot revive that denial. *Ortiz*, 562 U.S. at 184. The defense had to be preserved and presented at trial, but it was not.

**iii. Probable cause was disputed, and the jury was allowed to disbelieve the officers.**

Defendants assert that "[a]t trial, no actual challenge was made" by Plaintiff as to the issue of probable cause. (ECF 145-1, p. 4.) They contend that the trial offered "no basis for the Jury's finding that the arrest of either Officer Ray of Sergeant Snider lacked probable cause." *Id.* "Specifically," they write, "there was no basis to disbelieve that [sic] the officers [sic] testimony as to their observations." *Id.* But credibility determinations are for the jury. In passing on a Rule 50 motion, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000) (emphasis added.) "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Court's Order denying summary judgment made clear that because of material disputes of fact, the existence of probable cause was a question for the jury. The jury has now answered that question.

1. **Did Defendant Jayce Ray arrest Plaintiff Nicholas La Motte without probable cause in violation of the plaintiff's Fourth Amendment rights?**

X **Yes** ______ **No**

(ECF 121, p. 1.)

15. **Did Defendant John Snider cause Plaintiff Nicholas La Motte to be arrested without probable cause in violation of the plaintiff's Fourth Amendment rights?**

X **Yes** ______ **No**

(ECF 121, p. 5.)

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

Defendants' argument is that Mr. La Motte's "rapid speech, red eyes, and bounding pulse" were "uncontradicted," that Plaintiff's expert "disregarded any testimony that was not videotaped," and that Snider's evaluation was "completely unchallenged," so "no reasonable jury would have had a legally sufficient basis to find the officers lacked probable cause." ECF 145-1 at 2-5. But the trial record shows the opposite.

Defendants say at trial no one disputed the "red eyes." On direct, Officer Ray authenticated Exhibits 4A and 4B as accurate stills from the iPhone video, taken from less than a foot away from Mr. La Motte's face, showing completely white eyes. He testified that Mr. La Motte's eyes "appear to be white in the photos," and that what he claims he saw was not present in the photographs. RT vol. 2, 226:7-228:7. In total, *nine times a witness was asked if the exhibits showed red eyes*. Only one of them said yes, then took it back. RT vol. 2, 226:21, 226:23 (Ray, Exs. 4A and 4B); vol. 3, 422:5, 422:22, 423:2 (Snider); vol. 3, 527:21–23 (Erickson); vol. 4, 703:20, 705:24–25, 706:6 (Glenn). Far from being undisputed, the allegation that Mr. La Motte had red eyes was among the most hotly contested of the case, called into question the credibility of the officers, and by the close of evidence had been largely if not entirely refuted.

Rapid speech is the same. Ray defined it as faster than most people he contacts, agreed it "absolutely" could be something other than impairment, and agreed some people just talk faster. RT vol. 2, 228:12-229:5. The video evidence showed Ray speaking faster than Mr. La Motte during much of the encounter. Ex. 1, generally. Defense counsel told the jury that if they believe the officers only when it is on video, "they have no chance in this courtroom because even the MVARS they had wouldn't pick up his eyes." RT vol. 4, 778:14-17. A party cannot make such an assertion and then ask the Court to treat the issue as uncontradicted. So too with the issue of "bounding pulse." The only evidence of a bounding pulse was Ray's testimony, which the jury was entitled to assign less significance to than the Defendants would like, or to disbelieve altogether.

The rest of the encounter was disputed in the same way. Ray did not claim the driving showed impairment. He agreed speed alone is not a sign, and the only record of the number is his

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

word, which was impeached by the reading on the radar sign. RT vol. 2, 185:12-18; 216:9-12; 208:10–209:3; 209:21–24. La Motte testified he was not speeding at all. RT vol. 4, 614:21-22. On the one-leg stand, Ray said La Motte maintained positive balance, did not sway, and did not raise his arms. RT vol. 2, 303:8-14. Plaintiff's expert counted zero clues on that test. RT vol. 3, 537:18-19. The finger-to-nose misses Ray reported are not on the video. He agreed the jury cannot see them, and that La Motte got the left-right sequence right, which *is* on the video. RT vol. 2, 305:7-306:25. None of the tests were scientifically validated for drug impairment. RT vol. 3, 539:5-8. The blood toxicology showed the presence of Delta-9 THC at 1.5 nanograms per milliliter. Snider agreed Colorado's inference level is 5, and that 1.5 is less than a third of it. RT vol. 3, 501:5-16. Snider's opinion that La Motte was under the influence of a stimulant such as methamphetamine or cocaine was completely undermined by the blood toxicology showing neither was present. The DRE evaluation was in the motor bay, outdoors, at about 2:30 a.m., cold, because Snider claimed COVID rules kept in-custodies out of the office, an assertion later impeached by introduction of the Governor's proclamation as Ex. 12. RT vol. 3, 407:4-408:18; 411:6-412:22. Their expert, Lorenzo Glenn, who attempted to bless the arrest, admitted he was not a DUI expert, that he had never testified as a DUI expert, and didn't have any DUI expertise listed on his CV. RT vol. 4, 690:14–691:7.

The officers contradicted each other on signs they treated as important. Ray reported a white coating on the tongue and no heat bumps. RT vol. 2, 265:10-13. Snider, shown that testimony, said that was not what he saw: he saw a thick green coating. RT vol. 3, 442:11-18. Their expert's explanation was lighting. RT vol. 4, 717:6-14. Snider also reported droopy eyelids. RT vol. 3, 495:21-24. The still photos did not show them. RT vol. 4, 704:12-13. Plaintiff asked Snider to video record the DRE exam, but Snider would not. RT vol. 3, 413:12-414:3; 414:4-21. The jury was entitled to infer the reason Snider chose to not record the DRE was because he knew it would contradict his "findings."

The defense contention that Snider's observations went "completely unchallenged" is unmoored from the record. Here, "unchallenged" means "the jury should have credited him

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

because he holds a current DRE card." (ECF 145-1 at 5.) But Snider's qualifications or lack thereof are not conclusive on the issue of probable cause. The question was whether, on the totality of what these officers knew, there was a fair probability Mr. La Motte was driving under the influence of a drug. *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004). The jury said no. Substantial evidence supports that answer, including the video, the plaintiff's testimony, the toxicology, and the gaps in the officers' accounts. Rule 50 does not allow the Court to pick the officers' preferred version because the defendants wish the jury had believed them instead. The only question is whether when viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences for the non-moving party, the evidence permits only one reasonable conclusion, and it is contrary to the jury's. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000); *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). This is not a record on which only one conclusion is possible. The Court does not reweigh the evidence or judge witness credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where witnesses disagree, the jury may believe one and not the other. *Id.*

The jury was instructed that if it decided a witness deliberately testified untruthfully about something important, it could choose not to believe anything that witness said. RT vol. 4, 744:9-14. The stills, the video, the blood, and the internal contradictions of the defendants' testimony gave that instruction fertile ground. Rule 50 does not allow the Court to credit the officers' account over Mr. La Motte's when the jury was told it didn't need to. Probable cause is a jury question when the facts are in dispute. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). The Court may take the verdict from the jury only if the facts known to the officers, resolved in the plaintiff's favor, establish probable cause as a matter of law. Here they do not.

**iv. The punitive-damages Rule 50 motion was not preserved, and the evidence of malice was not "none."**

The Rule 50(a) motions on this record were limited to qualified immunity and probable cause. RT vol. 4, 658:19-659:11; 736:8-11. Malice, oppression, and recklessness were not moved

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

on. Thus, a Rule 50(b) attack on punitive damages has been waived. *Go Daddy*, 581 F.3d at 961. The right to challenge the punitive damages award for lack of evidence of malice was lost because that challenge could have been raised prior to verdict in a Rule 50(a) motion and it was not. *Freund v. Nycomed Amersham*, 347 F.3d 752, 762 (9th Cir. 2003). Even if such were not the case, Defendants' request has no merit.

Defendants' brief says, "plaintiff introduced *no evidence* [of] malice, recklessness, or oppression." (Emphasis in the original.) (ECF 145-1 at 8.) In their argument, the defense fails to cite once to the record of trial. In the Court's final charge to the jury, it provided lengthy instruction to the jury regarding punitive damages. (ECF 117, Jury Instruction No. 21, p. 23.) Having been so instructed, the jury found the defendants acted with "malice, recklessness, oppression, or a conscious disregard for the rights of Mr. La Motte." (ECF 121.) Evidence from which it could do so was abundant, including what appeared to be deliberate fabrication of inculpatory evidence (red and droopy eyes, white versus green tongue, reddened septum, Plaintiff's speed, results of field sobriety tests, results of DRE exam) the intentional disregard of exculpatory evidence (no bad driving, acceptable field sobriety test performance, PAS results of 0.00, Plaintiff's history of high blood pressure, no needle marks, no heat bumps, no cracked lips, no burns on fingers, Ray's declining to review La Motte's corroborating medical record at the hospital), a DRE evaluation in an uncontrolled environment engineered to be unreviewable, the refusal to video record when the ability to do so existed, keeping Mr. La Motte in the cold "because of COVID" when COVID restrictions had already been lifted, and Officer Ray showing no interest in whether any of his arrests, including Mr. La Motte's, were ever right. (Q: "How do you know if you are right when you arrested someone without a chemical test?" A: "Honestly, I never checked any of them." RT vol. 2, 319:22-25.)

**B. The strip search was not news, and it was not perjury.**

Rule 59 does not authorize a new trial because the losing party is unhappy with the verdict or with credibility determinations made by the jury. A new trial is only appropriate where the defense shows that the verdict was against the clear weight of the evidence, is based upon false or

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

perjurious evidence, or that a new trial is necessary to prevent a manifest miscarriage of justice. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). Newly discovered evidence justifies a new trial only if it was discovered after trial, could not have been discovered earlier with reasonable diligence, and is of such magnitude that it would probably change the result. *See Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990); *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987).

**i. Plaintiff did not testify to a physical cavity search.**

Defendants' brief says opening statement announced a "physical anal cavity search," that Mr. La Motte then "lied on the stand about having a physical cavity search," and that jail policy proves the lie. (ECF 145-1 at 2-3, 6-7.) These are flagrant misrepresentations and deserve censure.

As a preliminary matter, the statements of lawyers are not evidence, and the jury was so instructed. RT vol. 4, 743:1-2. Accordingly, the statements of a lawyer may not form the basis for a new trial motion predicated on "newly discovered evidence" because those statements are not evidence. But even if that were not the case, the defense argument is untenable.

Defendants write: "During opening statement, Plaintiff's counsel mentioned for the first time that, when booked, Plaintiff had a physical body cavity search…" The Court should not countenance this dishonesty. The passage at issue said nothing about a physical body cavity search. The exact wording was:

> "Nick had to be strip-searched. Had to have people look in his body cavities. And was tossed in a concrete box where he spent all of the money that he didn't have to bail out and await to see what would happen next." RT vol. 1, 145:1-4.

And here was the testimony from Mr. La Motte:

Q. So you're in this room by yourself. How long are you there?

A. I was sitting in there for about 10, 15 minutes until a bunch of correction officers came

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

to the door.
Q. Okay. And then what happened then?
A. I was forced to strip search.
Q. What does that mean?
A. They told me that I had to take off all my clothes. And I thought — I was like this is so humiliating. I got down to my boxers. And they told me no, you have to take everything off. And I had a bunch of guys looking at me. And they made me bend over and spread my cheeks and squat and cough. And then they made me turn around and they made me lift my private parts like three different times and make me move everything around and then again drop and squat, cough. And had me dress again.
Q. So in front of this group of grown men, you were ordered to take off all of your clothes?
A. Yeah.
Q. To bend over in front of them, show the men your rectum; is that right?
A. Yes.
Q. Spread your cheeks so they can look inside your butt; is that right?
A. Yes.
Q. And cough?
A. Yes. All because he said I'm on drugs, and I wasn't. RT vol. 4, 642:13-643:9

Neither Mr. La Motte nor his counsel ever referred to the search as a "physical cavity search" as the defense characterizes it (once on page 1, twice on page 2, three times on page 3, twice on page 7), or a "physical invasion" (once on page 7). This kind of distortion of the record nine times in an eight-page motion is not accidental. What Mr. La Motte described in his trial testimony is substantially the same as he described at his deposition. Mr. Emmons asked: "I hate to be indelicate. Aside from the strip search, was there a cavity search, or was it just a strip search?" And Mr. La Motte responded, not by saying no, but by describing what had occurred:

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

> "Well, I had to show him my private parts and drop my balls too to be - in layman's terms. Excuse my language. But that's what they told me to do. And I had to bend over and squat and cough. And yeah, it is pretty humiliating as a man. I don't think you would like that." Exhibit B to Emmons Decl., 139:22-140:4 (crosstalk omitted).

Defense counsel declined to ask any follow-up questions.

Mr. Emmons now declares that on September 15, 2025, he asked whether La Motte had a rectal cavity search, and that La Motte "only confirmed that he had been strip searched and received a hernia exam." Not to be "indelicate," but such characterization of Mr. La Motte's testimony is utterly untrue. Correctional officers do not conduct hernia exams during a strip search, and the deposition excerpt does not say that anyone did. For the defense to offer this Court knowingly false characterizations of the record to accuse Mr. La Motte of committing perjury is a special kind of hypocrisy. What Mr. La Motte described was not a "hernia exam." It was exactly the kind of procedure commonly used in jail settings to allow correctional staff to *visually* inspect the anal cavity. *See e.g., Bell v. Wolfish*, 441 U.S. 520, 558 n.39 (1979) where prison policy dictated an inmate must "lift his genitals and bend over to spread his buttocks *for visual inspection*." (Emphasis added); *Florence v. Bd. Of Chosen Freeholders*, 566 U.S. 318, 324 (2012) where inmates were told to "cough in a squatting position" as part of a visual search of a prisoner's body cavities; and *United States v. Fowlkes*, 804 F.3d 954, 959 (9th Cir. 2015) where officers strip searched an inmate, and as part of a visual inspection of his anus, instructed the prisoner to "bend over, spread his buttocks, and cough."

As with so much in this case, it is the defense's inexplicable refusal to acknowledge the case before them that has led them to this embarrassing end. And now faced with a loss they should have predicted, they resort to blaming the plaintiff when they can only truly blame themselves. This is not a difference of interpretation. Counsel has replaced the plaintiff's words

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

with a procedure he never described and then offered the absence of a report of that procedure as proof the witness committed perjury.

**ii. There was no diligence, and the material is not new.**

Defense counsel has known about the strip search since the deposition, eleven months before trial. The jail at issue is the Sonoma County facility where the defendant officers booked the plaintiff. Booking records and the jail's search policy were available by subpoena long before opening statement. Calling the jail a "third party" does not absolve the defendants of the requirement of reasonable diligence.

What arrived over the deliberation weekend is, on these declarations, a policy and a representation that no written report of the search existed. Snider Decl. ¶ 2; Emmons Decl. ¶ 4. As a threshold matter, Emmons' and Snider's declarations rely on inadmissible hearsay. A letter from the jail, the jail's policy itself, or what Snider or Emmons "learned" from unnamed contacts is all inadmissible hearsay. These are out-of-court statements the defense attempts to offer for their truth: what the policy required, and that no search occurred. Fed. R. Evid. 801(c), 802. Neither declarant is a custodian of the jail's records. Neither has personal knowledge of the booking room search or of a search of the jail's files. Fed. R. Evid. 602. A policy attached as an exhibit does not become admissible because a lawyer or a litigant says someone at the jail told him what it means or told him a report does not exist. Absence of a record, if it is to be proved, requires a qualified witness and the foundation laid out in Rule 803(7) or 803(10). Defendants supply neither. But even if these items were not untested hearsay, a policy that a search requires a report does not prove the policy was followed or that a search did not happen.

Nor would the material probably change the liability verdict. On August 31, outside the jury's presence, defense counsel described this same information and said it "mainly goes to the issues of damages, not liability since I don't think anyone is saying the strip search would be illegal if the arrest was lawful." RT vol. 5, 801:6-8. As for damages, Defendants' only basis for contending that the strip search was "the most significant harm in terms of damages" are the alleged statements of the jurors following trial, but…

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

**iii. The juror statements are inadmissible.**

Emmons declares that three jurors who stayed after the verdict said the strip search and cavity search were the "most significant harm in terms of damages." Emmons Decl. ¶ 5. But Emmons offers only his own recounting of these out-of-court statements, offered for their truth, and as such provides only more inadmissible hearsay. And even if it were not hearsay, Rule 606(b) expressly forbids juror testimony about any statement made during deliberations, or about the effect of anything on a juror's vote or mental processes, when offered to impeach the verdict.

> **(b) During an Inquiry into the Validity of a Verdict or Indictment.**
>
> **(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters. Fed. R. Evid. 606(b)(1).

*See also, Tanner v. United States*, 483 U.S. 107, 119-21 (1987) (warning that if such evidence were allowed, "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict …. [and that] "private deliberation [would be made] the constant subject of public investigation – to the destruction of all frankness and freedom of discussion and conference"; and *Warger v. Shauers*, 574 U.S. 40, 44-51 (2014) ("permitting such evidence would open the door to the most pernicious arts and tampering with jurors.) What jurors say they weighed on damages is the very core of what the rule excludes. The paragraph should be stricken, and it cannot carry the defense's motion.

//

SCHWAIGER LAW FIRM
2901 CLEVELAND AVENUE, SUITE 201
SANTA ROSA, CA 95403

## V. CONCLUSION

Qualified immunity was waived on the record. Punitive damages were not raised in the Rule 50(a) motion and are thereby waived. Probable cause and the applicability of punitive damages were jury questions, and substantial evidence supports the answers the jury gave for both. The strip search account was not new, was not a physical cavity search, and was known to the defense nearly a year before trial. The contents of the declarations of Messrs. Emmons and Snider are inadmissible hearsay, as are the professed statements of jurors, which are also expressly disallowed under Rule 606(b). The motion should be denied and sanctions imposed.

Dated: October 13, 2026

**SCHWAIGER LAW FIRM**

By: /s/*Izaak D. Schwaiger*
Izaak D. Schwaiger
Attorney for Plaintiff